Mr. Liu v. Holder, may it please the court. Good morning, honors. My name is Peng Qianma for the petitioner in this case. The honors, we ask this court to reverse the decision of the immigration judge and also the decision of the BIA, because the decisions made by the lower tribunals are based on arbitrary disregard of the evidence supporting this young lady's claim for asylum, and based on the immigration judge's speculation as to circumstances around the case, and also as a judge's entanglement with tiny matters that do not go to the heart of the issues, that do not go to the heart of the claim for asylum. First of all, this case that the petitioner presented, substantial evidence that supported her claim for asylum based on religious belief, religious practice in China, but the judge simply disregarded the evidence and found fault with her testimony based on things like whether he termed the documents a visa or a passport, and based on the judge's speculation as to the letter submitted by her parents, saying that, oh, he submitted the letters at the last minute of the case, and her parents wrote whatever she asked them to write. There was no evidence in the records showing that. And also, the petitioner submitted medical records to show her injuries as a result of police beating, and also the fines imposed on her as a result of the the judge spent a lot of time, a lot of effort, just analyzing the slip of the tongue on the matter as to whether the passport or the visa was obtained in secret. I think that is the major issue underlying the judge's decision. But we have to understand, a passport is in close association with the visa. Sometimes people, even I myself, sometimes may confuse the two, especially with someone young who has not traveled a lot. But in this case, and also, we have a live witness. We have a live witness to testify on behalf of the court of her case. But the judge simply ignored the evidence, ignored the testimony, and was silent on the testimony. And the totality of the evidence presented supports the claim for silence, but the judge and the BIA simply ignored the evidence. And the IJ basically said, because of minor inconsistencies during the testimony, which do not go directly to the heart of her claim, I find her testimony not persuasive and sufficient to stand alone to meet the burden. That's what the IJ said. I mean, in terms of these inconsistencies, said that they didn't go to the heart of her claim. Right, and also that those matters that are not essential, that's simply that the circumstances surrounding this young lady's life in China. And for instance, the judge mentioned that she submitted a visa application prior to her arrest or during her arrest. She explained that her parents helped her, and she did not get the visa. Actually, she got the visa in May of 2000, whatever, in May, several months after her release from custody, from police custody. She explained that. And also the government's brief mentioned that he didn't mention improper touching by the police during her custody in her statement. But she testified, she testified that she felt it too embarrassing to mention it in the hearing. She was questioned, she mentioned that. And I think from a young lady of 24 years old, that was a reasonable explanation for the omission of the fact of the improper touching by the police. And there's no question that she suffered past persecution, and she's eligible for asylum. In this case, we ask this court to simply scrutinize the fact findings made by the judge and by the BIA. The findings were not supported by evidence, and the decision based on the findings should be reversed. If your honors do not have any questions, I'm... You'll reserve the time. Right, I'm done. All right, thank you, Mr. Good morning, may it please the court. Elizabeth Chapman on account of the attorney general. Under the substantial evidence standard, the court must uphold the agency's decision if it's supported by reasonable and substantial evidence. And the court may only reverse if the evidence compels a contrary conclusion. Here, Ms. Liu's material misrepresentations surrounding the circumstances of her visa, these alone provide substantial evidence to support the agency's adverse credibility finding. Ms. Liu provided three separate and conflicting stories as to how, when, and why she applied for her visa to come to the United States. She was then confronted with evidence saying that she had been detained in January. She then shifted her testimony and said, no, in actuality, my parents did the entire process on my behalf, and I have no idea what they did. And then upon further questions, she shifts her testimony yet again, and she admits that she actually made all the arrangements prior to her detention. And it's her willingness to change her testimony on the stand when she's presented with evidence that doesn't support her case that alone is substantial evidence to support the agency's adverse credibility finding. She was given the opportunity to explain these inconsistencies, and she didn't. Now one of the things that IJ said was she was troubled by the fact that she had been mistreated in January and wanted to remain permanently in the U.S. because of the past persecution, and she questioned the timing of when she does have a year to file, right, that she filed within the year. Yes, she did question the timing as well, but the IJ and the board's decision can simply be upheld based on these misrepresentations that she made. Those are other facts that go to the totality of the circumstances, but the agency's finding can be upheld based on these misrepresentations as to how, when, and why she obtained her statement. And in her opening brief, she doesn't contest these. She doesn't say that she didn't make these, or before the court as well, simply states that they don't go to the heart of the claim. But as is well understood under the Real ID Act, inconsistencies do not need to go to the heart of the claim in order to support an adverse credibility finding, so long as the totality of the circumstances demonstrate that she did not testify credibly. And furthermore, these inconsistencies, while they don't go to the heart of the claim, they are not trivial and they are not insignificant. They're not trivial. She linked her entire reason for coming to the United States to her detention, so whether or not she came to the United States because she was detained, or if she already had the plans to come ahead of time, that is not trivial. Now why is that critical, though, in the assessment of her credibility? Well, it's critical because she changed her testimony on the stand. She was presented with evidence that did not support her case, and she didn't explain it. If there were an explanation, she didn't provide it. She changed her testimony three separate times, under oath, on the stand. Was that in the course of one hearing? Yes. So she first gave one answer. She was presented with testimony from the Department of State. She changed her testimony, and then she changed her testimony for a third time. And it's her, the fact that she changed her testimony on the stand when presented with evidence. And specifically, what did she change to this confusion with respect to the visa versus the passport and the filing time? Or spell out what exactly she changed. She first said she applied in March because of her arrest. She said, I had no intentions of coming to the United States before her arrest. She then said, well, actually, my parents arranged everything on my behalf. I don't know when they did it. And then she said, no, actually, I made the arrangements ahead of time, which is consistent with the fact that she obtained her visa in December, and she obtained all this supplementary evidence she needed for her visa, her letters of recommendation, her transcript, all of that prior to her arrest. These can't live in harmony. And she said she had no intentions of coming to the United States before her arrest. Why can't, I mean, all right, she said her parents made the arrangements. How is that inconsistent with the other comment she made? It's inconsistent to say my parents made the arrangements while I was detained on my behalf, and I don't know how they did it. That's inconsistent with saying- While she was detained, you said? While she was detained. That's inconsistent with her saying, I made the arrangements in March after my arrest. And that's also inconsistent with her saying, I made the arrangements prior to my arrest, and I was planning on coming to the United States anyways. That's inconsistent with her statement that she had no intentions of coming to the United States prior to her arrest. And it's the fact that she gave three separate answers to the same questions that undermines her credibility. As an applicant for asylum- What does that have to do with her coming to the United States, though, even if she did have some confusion about when she applied to come? What it had to do with her coming to the United States. The reasons for her coming, if she said that she had no intentions of coming prior to her arrest and her arrest was her sole reason for coming to the United States, that conflicts with her saying, well, yes, I was planning to come anyway, and I made all the visa arrangements. Had she said those two, they wouldn't be in conflict, but she did not state that. She shifted her testimony when confronted with evidence that wasn't in her favor. So now, but in terms of the evidence she presented about the abuse when she was had been paid, right? Yes. And that date was consistent with when she said she was jailed. Yes. And she did go to the hospital and there were medical records that corroborated that. And then when the mother presented this letter, whatever time she presented it, it corroborated the harm that she had been suffered, and she had this other evidence to corroborate it. Right. So as to her corroborating evidence, none of it compels the conclusion that she was detained and interrogated and persecuted by the police on account of her religion. Oh, of course, unless you get something where the police admit it, it's very rare that that's going to come out that they did it because of your religion. But we do look at certain evidence as an indicia of support. And actually, there have been cases that we've seen that have far less than what she's presented to have the actual receipt and the actual medical record of injuries. Of course, the government didn't have any evidence to the contrary about how her injuries occurred, right? Right. But now that's just it. Had she testified credibly, this could be an indicia of support. But she did not testify credibly. Let's just focus, if I can, following up on Judge Kaney's inquiry, about not testifying credibly. So we have, taking the government's position, she never intended to come to the country. Then she's detained, and she says now she wants to come to this country, detained and allegedly, under her view, those aren't inconsistent, are they? If I said I wasn't intending to come to America, that I was detained by the police, I decided I do want to come to America, that's not inconsistent, would you say? No. That's not a major inconsistency. What's inconsistent is her testimony that she had no intentions of coming to the United States prior to her arrest, and her testimony that she made the arrangements to come to the United States, that's inconsistent. Either she had the intentions of coming, or she didn't have the intentions of coming. For her statement that she had no intentions of coming, conflicts... Now, is it, you know, but she's saying it in the course of one hearing. I mean, I agree there's, they're inconsistent. Right. But they don't really speak to, they speak, wouldn't you think, to more confusion? I mean, if you're making those kind of an intention to acknowledge I'm making a mistake once, and now I'm speaking truthfully? I think she was confronted with evidence that did not favor her case, and she shifted her testimony to try to redirect her evidence, and she shifted it three separate times when she was presented with evidence that did not favor her case. Who presented the evidence? Who was she being questioned by? By the ICE attorney. I'm sorry? By the ICE attorney. And as the applicant for asylum, she alone bore the burden of demonstrating her eligibility. Nothing in the record compels the evidence that she met her burden of proof. Well, like this whole passports versus visa business. So there's an interpreter, right? Because she, English is not her first language. So they're looking at the passport. They say we're not done with Mr. Ma's direct exam. I just wanted to look at the passport because it's not complete. And the judge says it looks like it was issued December 1, 2010, but you weren't even arrested until January 2011. So why did you need your passport in a secret manner? And she goes, no, no, no. And the translator says, repeat your answer. She says, well, I didn't express myself correctly. I didn't say that. I should have said that the visa was obtained in a secret manner, not the got on her for that confusion. But this is clearly, or at least one could interpret it as just being confusion in terms of the interpreter. And that's one issue that's actually separate from her shifting testimony regarding how and when and why she obtained her visa. Okay, so you can see that that in itself is not enough. Correct. That simply goes to the totality of the circumstances. The main thing you're hanging your hat on is when she made the decision to come to the United States. That's the main inconsistency you're hanging your hat on. It's her shifting testimony as to when and why and how she obtained her visa. So even though all these other inconsistencies have been raised, you agree with the IJ's characterization, they were minor and they did not go to the heart of the case. Correct. Things like this. So it's that one thing about why she, when she decided she was coming to the United States and her changing on that one thing that is controlling in your view in terms of how the IJ evaluated her credibility. It's controlling and the rest adds to the totality of the circumstances. So we started going through the totality and you've admitted like this one was minor. Some of these other things are minor. So really that's the big factor. Correct. That's the big factor is her shifting testimony on the stand and her three separate and stories as to how, why, and when she obtained her visa. So what, do you have any view of why she really, really wanted to come? I can't get into her head. I don't know why she really wanted to come or what her actual intentions. Didn't have anything to do with religion though. The evidence does not compel the conclusion that she was persecuted in China and that she fled China out of persecution. Evidence does not compel the conclusion she met her burden establishing her eligibility. So you're saying that she would have needed like a newspaper article or a statement by somebody saying this is why she was arrested like by the officer or somebody who arrested her? This evidence on his back, on his face does not support. We don't have any evidence, contemporaneous evidence, that she was a practicing Christian in China. An arrest record would have helped. A newspaper article would have helped. Department of State information saying that the government does not, government cracks down on Christian home churches in her province. All of that would have helped. I can't state exactly what would have been sufficient to tip the scales. And of course there's nothing, you don't have any kind of criminal record or criminal history of hers to suggest that oh maybe she just got arrested because of theft or some other, some other thing and that that's what led to her being here. No, but that's certainly a possibility here. That's, the does not present compelling evidence demonstrating why she was detained, that she was abused in detention. Even though, even though, even though the medical evidence corroborates it because she had that medical booklet that documented her injuries and there was a support witness who testified in court to her Christian faith. The medical evidence doesn't state how she obtained her injuries and her suggesting that in terms of the medical injuries, because I don't know, do you know how they do the records in China? Do, does a person that's been beaten come into the hospital and say I've been beaten by the police because I practiced my religion and I have these injuries? Do they typically put that in a medical record? That can certainly have repercussions if they gave that kind of detail. You agree with that? I understand your concern. Yeah, I mean that would be a problem. Yes, but this, what I'm saying is that her testimony was not credible. Had she testified credibly, this evidence could corroborate her claims, but she did not testify credibly and this evidence alone is not sufficient or persuasive. So let me put it another way. So this flip-flopping you're saying that she did, let's take that out the picture. If that was out the picture, would there be sufficient evidence to support her position? I can't bind the Attorney General to that. I imagine there could be, but I can't bind the Attorney General to that and it's not for the Court's position to view the facts. It's to see whether or not substantial evidence in this record supports the agency's finding. And here, her flip-flopping as you put it, her misrepresentations under oath, providing three separate and conflicting stories to the same questions, that alone is substantial evidence to support the agency's adverse prejudice. And by my saying flip-flopping, I'm just restating the government's argument. I'm not saying that's necessary, that's my view. You understand that? Yes, of course. Okay. Thank you, Ms. Johnson. Mr. Ma? This question and answer reminded me that the inconsistency that the judge found was between her testimony that he had no intention of coming to the United States before her arrest and the fact that she testified that she obtained letters of recommendation from officers before she left college. That is, the fact that she obtained letters of recommendation from professors has nothing to do with whether she wanted to come to the United States later on. And obtaining letters of recommendation does not show that she has intent to come to the United States. And every student, every college student will have to consider his or her future upon graduation. It's very understandable that they try to obtain something from their professor when the relationship is closer before they leave college. Another thing is the judge takes issue with her time when he consulted an attorney for the possibility of filing an asylum application. The law provides that as long as you apply within a year, that's within the deadline, before the deadline. I don't think it's material when he that has any bearing on her credibility as to whether what something happened to her in the past. And also the timing of the filing of her evidence. The immigration court procedures allows, requires that every piece of evidence had to be filed 15 days prior to the final hearing. That's what the I don't see any problem. And the judge take issue with that. That's a last-minute filing. That's the, the decision is arbitrary. I don't think that the decision is supported by the evidence. We request that this court reverse the decisions of the lower court. Thank you. Thank you, Mr. Navarro. Thank you, Ms. Chapman. Case is taken under advisement and the court will stand in recess.